IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| YOLANDA NKEMAKOLAM, as Parent and Next Friend of K.N., )))) and )) CHRISTINE STACY, as Parent and Next Friend of N.S., )))) and )) PATRICK STACY, as Parent and Next Friend of G.S., )))) and )) DIANE TIMM, as Parent and Next Friend of H.T., )))) and )) JOHN DOES 1-50, )))) Plaintiffs, )) v. ) ST. JOHN'S MILITARY SCHOOL [SERVE: St. John's Military School Resident Agent 1300 N. Santa Fe Salina, KS 67401], )))))))) and )) THE DOMESTIC AND FOREIGN MISSIONARY SOCIETY OF THE PROTESTANT EPISCOPAL CHURCH IN THE UNITED STATES OF AMERICA [SERVE: The Corporation Trust Company Corporation Trust Center 1029 Orange Street Wilmington, DE 19801], | Case No. 12-cv-2132 JWL/KGG |

| | |
|---|---|
| and | ) |
| | ) |
| THE EPISCOPAL DIOCESE OF | ) |
| KANSAS, INC. | ) |
| [SERVE:  Dean E. Wolfe | ) |
| 835 SW Polk St., Bethany Place | ) |
| Topeka, KS  66612] | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiffs, Yolanda Nkemakolam, as parent and next friend of K.N. ("K.N."), Christine Stacy, as parent and next friend of N.S. (N.S.), Patrick Stacy, as parent and next friend of G.S. ("G.S."), and Diane Timm as parent and next friend of H.T. ("H.T.") (all Plaintiffs will collectively be referred to as "Plaintiffs"), for their cause of action against Defendant St. John's Military School ("St. John's"), The Domestic and Foreign Missionary Society of the Protestant Episcopal Church in the United States ("Episcopal Church") and the Episcopal Diocese of Kansas, Inc. ("Kansas Episcopal Church") (collectively the "Episcopal Church Defendants") allege and state as follows:

## INTRODUCTION

"Train a child in the way he should go, and when he is old he will not turn from it."

--Proverbs – Ch. 22:6

"When we assumed the soldier, we did not lay aside the citizen."

--George Washington

"Leave no man behind."

--U.S. Marine Corp. mantra

St. John's episcopal military school is the antithesis of such valued instructions.  The school allows and encourages older students to abuse young students – physically, mentally,

2

emotionally and sexually. Students reporting abuse are "RATS" subject to additional abuse by the school and students for their disloyalty. When concerned parents inquire about injuries to their children, the school responds in lies to cover-up its true culture. This is not a case about mere hazing, or a case of "boys will be boys." This action chronicles a dangerous and disturbing culture at a boys military school which must end.

## THE PARTIES

1. Plaintiff K.N. is a resident of the State of Texas and resides at 19003 La Verita, San Antonio, Texas. K.N. is a minor, under the age of 18. Yolanda Nkemakolam is the parent and legal guardian of K.N. During portions of the 2011-2012 school year, K.N. was enrolled as a student at St. John's.

2. Plaintiff N.S. is a resident of the State of Colorado and resides at 1265 Snowberry Lane, Broomfield, Colorado. N.S. is a minor, under the age of 18. Christine Stacy is the parent and legal guardian of N.S. During portions of the 2010-2011 and 2011-2012 school years, N.S. was enrolled as a student at St. John's.

3. Plaintiff G.S. is a resident of the State of Colorado and resides at 1265 Snowberry Lane, Broomfield, Colorado. G.S. is a minor, under the age of 18. Patrick Stacy is the parent and legal guardian of G.S. During portions of the 2011-2012 school year, N.S. was enrolled as a student at St. John's.

4. Plaintiff H.T. is a resident of the State of Illinois and resides at 3814 Berry Court, Crystal Lake, Illinois. H.T. is a minor, under the age of 18. Diane Timm is the parent and legal guardian of H.T. During portions of the 2011-2012 school year, H.T. was enrolled as a student at St. John's.

5. Defendant St. John's is a Kansas corporation with its principal place of business at 110 East Otis Avenue, Salina, Kansas 67401. The registered agent for service of process is St. John's Military School, 1300 North Santa Fe Avenue, Salina, Kansas 67401.

6. Defendant the Episcopal Church is a not-for-profit New York corporation. The registered agent for service of process is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801

7. Defendant the Kansas Episcopal Church is a Kansas not for profit organization with its principal place of business at 835 SW Polk, Topeka, Kansas 66612. The registered agent for service of process on The Episcopal Diocese of Kansas, Inc. is Dean E. Wolfe, 835 SW Polk Street Bethany Place, Topeka, KS 66612.

## JURISDICTION AND VENUE

8. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 as the matter in controversy exceeds the sum of $75,000 and the parties are citizens of different states.

9. Venue is proper pursuant to 28 U.S.C. § 1391 as Defendant St. John's is a resident of this district. Furthermore, a substantial part of the events giving rise to the claims brought in this action took place in this judicial district.

## FACTS COMMON TO ALL COUNTS

10. St. John's is a residential boarding school located in Salina, Kansas.

11. St. John's houses and allegedly educates students from grades 6 through 12.

12. St. John's provides housing for its students on its premises.

13. As a residential boarding school for minors, St. John's stands in the position of parents and guardians of students in attendance. As a result, St. John's has a special "duty" to protect students and to regulate and monitor the behavior of all students.

14. St. John's represents itself as a military school and at the same time it is affiliated with the Episcopal Church Defendants and a member of the National Association of Episcopal Schools.

15. St. John's was founded by the Episcopal Bishop Elisha Smith Thomas. It has an episcopal chapel on campus and an Episcopal Chaplain lives on campus. All students attend Sunday morning services as well as Wednesday night services.

16. The Chaplain leads the Chapel Council, a group of students that participate in the liturgical worship of the Episcopal Church. The Episcopal Chaplain also teaches an ethics class and counsels students at St. John's.

17. Through the intricate association with St. John's, the Episcopal Church Defendants are aware of and condone St. John's and its practices.

18. St. John's markets itself throughout the country and, in fact, runs television advertisements in the Denver, Colorado area.

19. On its website, St. John's boasts it was founded in 1887 and, for over 120 years, the school has been dedicated to the development of young men while maintaining a principal objective to help ensure that children's future lives are filled with success, happiness, and personal fulfillment.

20. St. John's explains its principal objective is achieved through a rigorous academic environment complemented by a structured campus life, promoting the development of personal qualities such as personal grace, confidence, respect, high moral character, and leadership that will be indispensable to its students in their future years.

21. In order to attend St. John's, parents are required to sign a contract with the school which mandates payment of $29,500 per year. The contracted amount is non-refundable regardless of dismissal for cause or voluntary withdrawal.

22. Although not, in fact, the military, St. John's represents that it "educates" children through a structured military routine.

23. When children are initially enrolled in St. John's, they begin a six week process known as "New Boy" training. During this process, children are not permitted to talk to anyone and are subjected to significant Physical Training ("P.T.").

24. After graduating from New Boy, each child is placed into a "company" where they typically reside for the remainder of the school year.

25. St. John's "structured teaching model" grants students at senior levels (the "Disciplinarians") the authority to discipline New Boys and other low ranking students (the "Younger Boys").

26. Through this model, St. John's hands over to adolescent students the school's obligation to act as parent to each child enrolled at the institution. These Disciplinarians abuse that power and take their authority beyond any reasonable limits while putting the Younger Boys in constant fear of physical and mental harm.

27. Because St. John's grants its Disciplinarians the authority to discipline the Younger Boys, it should have heightened security and increased personnel to monitor all activities and protect its children. Yet, in practice, it does quite the opposite.

28. St. John's students live in dormitories that even its former president called "a terrible place." The dormitories significantly lack monitoring in the form of personnel and

cameras. At most, only one adult supervisor remains in the dormitory overnight to monitor the student activities.

29. By housing students in facilities with minor supervision, St. John's grants its Disciplinarians carte blanche to do what they wish and inflict harm upon the Younger Boys.

30. St. John's is on notice that abuse occurs throughout the school and has instigated arbitrary and capricious measures to create a false representation that it makes an effort to protect its students.

31. One of those measures is a bruise check system, a routine where the students are checked for bruises by St. John's staff on a weekly basis. The checks are arbitrary because they take place on the same day each week. If a bruise is found, essentially any excuse for its creation is accepted and, of course, any children that fear the threat of retribution will not inform the school of the individual that abused them.

32. Although St. John's requests that students inform school personnel if beatings occur, it subsequently tells the Disciplinarians which individual reported the beatings. It is commonly known throughout the school that if a student reports any beatings, he will suffer significant retribution.

33. Similarly, if a parent contacts the school to discuss concerns regarding physical abuse, the staff will discuss the concerns with the Disciplinarians responsible for caring for the lesser ranked students, a practice which results in additional abuse.

34. In short, St. John's accepts almost $30,000 per student, hands over its obligations to the Disciplinarians, and turns a blind eye to abuse and ignores cries for help from the Younger Boys.

35. St. John's allowance of student discipline has resulted in physical harm to its students in the forms of:

    (a) Vomiting and physical exhaustion as a result of too much PT;

    (b) Branding;

    (c) Saber swatting;

    (d) Initiation rituals that include physical beatings with locks, soap and fists; and

    (e) Other physical and mental abuse.

36. Since the Spring of 2006, St. John's has settled NINE (9) lawsuits related to abuse of its students.

37. St. John's knew or should have known, through the numerous lawsuits stemming from physical abuse it settled, that the Disciplinarians have acted and continued to act in a manner that is physically injurious to others.

38. St. John's knew or should have known, through the numerous lawsuits stemming from physical abuse it settled, that Plaintiffs would be forced into contact with students who tended to act in a manner that was physically injurious to others.

39. St. John's knew or should have known, through numerous reports of physical abuse from its students and their parents, that the Disciplinarians are acting in a manner that is physically injurious to others.

40. St. John's knew or should have known, through numerous reports of physical abuse from its students and their parents, that Plaintiffs would be forced into contact with students who tended to act in a manner that was physically injurious to others.

## K.N.

41. K.N. attended St. John's during the Spring semester of 2011.

42. While attending St. John's, K.N. was subjected to significant physical and mental abuse including the following:

(a) In one incident, K.N. was bound, gagged and beaten by multiple students. The students took pictures of the event and posted them to Facebook.

(b) K.N. was randomly assaulted by multiple students for inconsequential reasons.

(c) K.N. was pushed around, locked into a locker, and left in it for over 30 minutes.

(d) K.N. was forced to get into his uniform, roll around in mud and then discard all of his clothes.

(e) K.N. was urinated on by other students while in the shower.

(f) K.N. was bullied into purchasing food for other students and was afraid to sleep at night for fear that other students would steal his personal belongings or demand he awake to perform PT.

43. During his stay at St. John's, K.N. told his parents of the conditions and abuse. K.N.'s parents contacted the school on multiple occasions to discuss the situation.

44. Every time the issues were presented to the school, the school informed K.N.'s parents that he was doing just fine and he was making up stories in hopes of leaving the school.

45. On multiple occasions, K.N.'s paretns contacted Sgt.Maj. Jerry Nichols, the Director of Cadet Life. Each time, Nichols informed K.N.'s parents that everything was fine with K.N. and he was making up stories. On the final phone call to Nichols prior to Thanksgiving break, Mr. Nichols became upset and exclaimed "it pisses me off that he is bothering you guys like this!"

46. In December, K.N. approached the school president to inform him of the abuse he was suffering to which the president inquired whether K.N. suffered from a mental problem.

9

47. Since leaving St. John's, K.N. has suffered from an inability to sleep as a result of constant nightmares and has been diagnosed with Post-Traumatic Stress Disorder ("PTSD") as a result of the abuse he suffered while attending St. John's.

48. In order to function, K.N. must take medication.

49. K.N. incurred and continues to incur medical expenses as a result of the abuse.

50. Additionally, because St. John's has refused to release K.N.'s transcripts, K.N. will be forced to redo the 11th grade starting in the Fall of 2012.

## N.S.

51. N.S. attended St. John's during the 2010-11 school year and returned for the 2011-12 year, but was ultimately dismissed in January of 2012.

52. N.S.'s life was threatened by another student on the first day he arrived at St. John's.

53. While at St. John's, N.S. was the victim of multiple beatings at the hands of certain students.

54. N.S. was physically beaten for things such as leaving his room during study hall or for having tobacco in his room.

55. The beatings came in the form of violent blows to the head or punches to the body in order to avoid areas that could be seen during a bruise check.

56. While attending St. John's, N.S. witnessed children attempt to commit suicide and, on one occasion, an attempted rape.

57. N.S. reported the situation to his parents but requested his parents not contact the school because it was common knowledge that if someone reported something, the student would be beaten worse the next time.

### G.S.

58. G.S. attended St. John's for the Fall semester of 2011 and returned for just a short period in the Winter of 2012 before being dismissed.

59. While at St. John's, G.S. witnessed beatings take place on daily basis.

60. While at St. John's, G.S. was forced at any hours of the day to participate in PT to the point of vomiting.

61. After deciding he did not want to stay at St. John's any longer, G.S., along with another student, left the school and attempted to hitch-hike back to Colorado.

62. Upon realizing the students' absence, the Commandant of the school organized students in the Advanced Military Skills ("AMS") group, put them on a bus and searched for G.S.

63. G.S. was found on the highway. Upon being found, G.S. was beaten by the students. When G.S was placed on the bus, other students put his hood over his head and repeatedly slammed his head into the seat in front of him.

64. The Commandant who was driving the bus witnessed the beating, allowed the beating to occur, and refused to intervene.

65. Upon exiting the bus, G.S. was told by the Commandant that he did not see anything. Subsequently, G.S.'s backpack was dumped out, water was poured upon him, his shoes were tied together and he was forced to stand at attention for an hour.

66. G.S.'s experience at St. John's has had a traumatic affect upon him.

### H.T.

67. H.T. attended St. John's from October 2011 through December 2011.

68. While attending St. John's, H.T was the victim of multiple beatings and suffered from extreme abuse.

69. Rather than being granted the right to eat, on many occasions H.T. was pulled out of meal time to participate in strenuous PT to the point of vomiting or absolute exhaustion.

70. When H.T. returned home for Thanksgiving, he had visible bruises upon his face.

71. The bruises were a result of an incident where several students entered H.T.'s room with the intent to lock him into a locker.

72. Rather than getting locked in the locker, H.T. defended himself and, as a result, was significantly beaten by the students.

73. In a separate incident occurring on the evening of December 8, 2011, H.T. was in his room when a senior ranking student entered.

74. While H.T. was standing at parade rest (hands behind his back), the senior ranking student began interrogating H.T. about a bag of laundry. Within seconds, the student took H.T.'s head and slammed it against his knee.

75. Rather than receiving proper medical attention at the time, St. John's staff did nothing more than contact H.T.'s parents to represent H.T. "had been in a fight" and that he would go to the nurse's office in the morning.

76. When his injuries were finally addressed the next morning, H.T. was sent to the hospital because he suffered a fractured orbital socket as a result of the knee to the head. Prior to flying home for the holidays, H.T. was forced to see an eye specialist due to an increased risk of pressure in his eye potentially resulting in permanent vision loss.

77. Even though physical violence is grounds for expulsion at St. John's, the student that broke H.T.'s orbital socket was not expelled.

78. Well prior to December 8, 2011, H.T.'s parents had contacted the school with concerns regarding abuse.

79. On October 17, 2011, H.T.'s parents contacted Sgt. Maj. Jerry Nichols to discuss the things they had heard from H.T. and observed at parent's weekend. The response was that it was common for boys to tell stories to make their parents feel sorry for them and he represented that St. John's does not condone such physical beatings. Nichols represented he would look into the issue, but never contacted the parents again.

80. H.T. incurred and continues to incur medical expenses as a result of the abuse.

## COUNT I
## NEGLIGENT SUPERVISION BY ST. JOHN'S

81. Plaintiffs incorporate each and every allegation contained in numbered Paragraphs 1 through 80 above and make the same a part hereof as if fully set forth herein.

82. St. John's acts in *loco parentis* with respect to its students. As such, St. John's had a duty to control the conduct of the students who physically harmed Plaintiffs so as to prevent them from doing such harm and to protect Plaintiffs against unreasonable risks of harm.

83. In failing to properly supervise and/or otherwise control the conduct of its students, St. John's breached its duty.

84. St. John's breach of its duty to control the conduct of its students was the cause-in-fact and proximate cause of Plaintiffs' injuries.

85. Plaintiffs suffered damages as a result of St. John's negligence.

86. St. John's is therefore liable for Plaintiffs' damages.

WHEREFORE, Plaintiffs respectfully request the court enter judgment in their favor against St. John's in an amount in excess of $75,000.00; that the costs of this action be assessed

against St. John's; that the Court grant punitive damages against St. John's; and, that the Court grant such other and further relief as it deems fair and equitable in the circumstances.

## COUNT II
## NEGLIGENT SUPERVISION BY THE EPISCOPAL CHURCH DEFENDANTS

87. Plaintiffs incorporate each and every allegation contained in numbered Paragraphs 1 through 86 above and make the same a part hereof as if fully set forth herein.

88. The Episcopal Church Defendants, the very entity that created the school, have a physical presence at St. John's through the presence of a Chaplain and a chapel, yet they make no effort to supervise and protect the students.

89. By being present and representing their influence over the institution on St. John's web site and through media and other sources the Episcopal Church Defendants know of their duty to control and supervise St. John's.

90. By intentionally failing to supervise and/or otherwise control the conduct of St. John's, the Episcopal Church Defendants breached their duty.

91. Plaintiffs suffered damages as a result of the failure to supervise.

92. The Episcopal Church Defendants are therefore liable for Plaintiffs' damages.

WHEREFORE, Plaintiffs respectfully request the court enter judgment in their favor against the Episcopal Church Defendants in an amount in excess of $75,000.00; that the costs of this action be assessed against Episcopal Church Defendants; for punitive damages; and, that the Court grant such other and further relief as it deems fair and equitable in the circumstances.

## COUNT III
## INTENTIONAL FAILURE TO SUPERVISE

93. Plaintiffs incorporate each and every allegation contained in numbered Paragraphs 1 through 92 above and make the same a part hereof as if fully set forth herein.

14

94. St. John's acts in *loco parentis* with respect to its students. As such, St. John's had a duty to control the conduct of the students who physically harmed Plaintiffs so as to prevent them from doing such harm and to protect Plaintiffs against unreasonable risks of harm.

95. St. John's knew of its duty to control its students and was aware of the dangerous propensities of some of its students.

96. By intentionally failing to supervise and/or otherwise control the conduct of its students, St. John's nurtures and promotes the violent atmosphere and as such breached its duty.

97. Plaintiffs suffered damages as a result of St. John's failure to supervise its students.

98. St. John's is therefore liable for Plaintiffs' damages.

WHEREFORE, Plaintiffs respectfully request the court enter judgment in their favor against St. John's in an amount in excess of $75,000.00; that the costs of this action be assessed against St. John's; for punitive damages; and, that the Court grant such other and further relief as it deems fair and equitable in the circumstances.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS or OUTRAGE

99. Plaintiffs incorporate each and every allegation contained in numbered Paragraphs 1 through 98 above and make the same a part hereof as if fully set forth herein.

100. St. John's through its conduct acted intentionally or with reckless disregard of the possibility of causing emotional distress to Plaintiffs by placing Plaintiffs in close proximity with persons in its custody whom it knew acted in a manner that was physically injurious to others, and further by failing to supervise or control the conduct of those persons.

101. St. John's conduct as outlined in the paragraphs above was also extreme and outrageous.

102. St. John's conduct was the cause-in-fact and proximate cause of Plaintiffs' emotional distress.

103. As a result of St. John's conduct, Plaintiffs suffered severe and extreme emotional distress.

104. Therefore, St. John's committed the tort of Intentional Infliction of Emotional Distress against Plaintiffs, and is liable to Plaintiffs for compensatory as well as punitive damages.

WHEREFORE, Plaintiffs respectfully requests the court enter judgment in their favor against St. John's in an amount in excess of $75,000.00; that the costs of this action be assessed against St. John's; for punitive damages; and, that the Court grant such other and further relief as it deems fair and equitable in the circumstances.

## COUNT V
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

105. Plaintiffs incorporate each and every allegation contained in numbered Paragraphs 1 through 104 above and make the same a part hereof as if fully set forth herein.

106. St. John's acts in *loco parentis* with respect to its students. As such, St. John's had a duty to control the conduct of the students who physically harmed Plaintiffs so as to prevent them from doing such harm and to protect Plaintiffs against unreasonable risks of harm.

107. In failing to properly supervise and/or otherwise control the conduct of its students, St. John's breached its duty.

108. St. John's through its conduct and omission acted with disregard of the possibility of causing emotional distress to Plaintiffs by placing Plaintiffs in close proximity with persons in its custody whom it knew acted in a manner that was physically injurious to others, and further by failing to supervise or control the conduct of those persons.

16

109. St. John's conduct as outlined in the paragraphs above was also extreme and outrageous.

110. St. John's conduct was the cause-in-fact and proximate cause of Plaintiffs' emotional distress.

111. As a result of St. John's conduct, Plaintiffs suffered severe and extreme emotional distress.

112. Therefore, St. John's committed the tort of Negligent Infliction of Emotional Distress against Plaintiffs, and is liable to Plaintiffs for compensatory as well as punitive damages.

WHEREFORE, Plaintiffs respectfully requests the court enter judgment in their favor against St. John's in an amount in excess of $75,000.00; that the costs of this action be assessed against St. John's; for punitive damages; and, that the Court grant such other and further relief as it deems fair and equitable in the circumstances.

## COUNT VI
## BREACH OF FIDUCIARY DUTY

113. Plaintiffs incorporate each and every allegation contained in numbered Paragraphs 1 through 112 above and make the same a part hereof as if fully set forth herein.

114. As a boarding school St. John's has a duty to act in *loco parentis* to its students, giving rise to a fiduciary duty.

115. By failing to supervise its students and allowing Plaintiffs to be beaten, St. John's breached its duty to Plaintiffs.

116. St. John's breach of its duty to supervise and control the conduct of its students was the cause-in-fact and proximate cause of Plaintiffs' injuries.

117. Plaintiffs suffered damages as a result of St. John's breach.

WHEREFORE, Plaintiffs respectfully requests the court enter judgment in their favor against St. John's in an amount in excess of $75,000.00; that the costs of this action be assessed against St. John's; and, that the Court grant such other and further relief as it deems fair and equitable in the circumstances.

## COUNT VII
## CIVIL CONSPIRACY OF ASSAULT AND BATTERY

118. Plaintiffs incorporate each and every allegation contained in numbered Paragraphs 1 through 117 above and make the same a part hereof as if fully set forth herein.

119. St. John's acts in *loco parentis* with respect to its students. As such, St. John's had a duty to control the conduct of the students who physically harmed Plaintiffs so as to prevent them from doing such harm and to protect Plaintiffs against unreasonable risks of harm.

120. The Discipliners were entrusted by St. John's with the duty of physically training and disciplining the Younger Boys, including the Plaintiffs.

121. The Discipliners, at the direction and, in at least one instance, under the observation of St. John's and its employees, attempted and succeeded in causing physical contact with Plaintiffs.

122. The Discipliners, at the direction and, in at least one instance, under the observation of St. John's and its employees, attempted and succeeded in causing the immediate apprehension of physical contact in Plaintiffs.

123. The attempts to physically injure and physical contact with Plaintiffs were unlawful and unjustified.

124. As a result of such attempts, Plaintiffs sustained injuries.

125. The Discipliners, at the direction and, in at least one instance, under the observation of St. John's and its employees, committed assault and battery upon Plaintiffs.

126. St. John's did wrongfully conspire with certain students to commit assault and battery upon Plaintiffs.

127. St. John's conspiracy was the cause-in-fact and proximate cause of Plaintiffs' injuries.

128. Plaintiffs suffered damages as a result of the conspiracy.

WHEREFORE, Plaintiffs respectfully requests the court enter judgment in their favor against St. John's in an amount in excess of $75,000.00; that the costs of this action be assessed against St. John's; and, that the Court grant such other and further relief as it deems fair and equitable in the circumstances.

## JURY DEMAND

Plaintiffs, request a jury trial on all issues so capable of being tried as they are entitled pursuant to their Seventh Amendment Constitutional rights.

## DESIGNATION OF PLACE OF TRIAL

Plaintiffs hereby designate Kansas City, Kansas as the place of trial in this case.

Respectfully submitted,

**MILLER SCHIRGER, LLC**

/s/ Daniel R. Zmijewski
Daniel R. Zmijewski, KS # 21275
4520 Main Street, Suite 1570
Kansas City, MO 64111
P: 816-561-6500
F: 816-561-6501
E: dzmijewski@millerschirger.com
E: jfeierabend@millerschirger.com

ATTORNEYS FOR PLAINTIFFS