IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

YOLANDA NKEMAKOLAM, )
as Parent and Next Friend of K.N., et al., )
 )
Plaintiffs, )
 )
v. ) Case No. 12-2132-JWL
 )
ST. JOHN'S MILITARY SCHOOL, et al., )
 )
Defendants. )
 )
_____)

## **MEMORANDUM AND ORDER**

The matter is presently before the Court on the motion by defendant St. John's Military School ("St. John's") for partial summary judgment (Doc. # 164). The Court **denies** the motion.

1. By this motion, St. John's seeks summary judgment only on plaintiff Michael Kelly's[1] claim for intentional failure to supervise (Count III of the second amended complaint). St. John's first argues that "intentional failure to supervise is not a recognized cause of action in Kansas." In its initial brief, the only argument by St. John's was that "[t]here is no jury instruction or case on point that acknowledges intentional failure to supervise as a recognized cause of action." St. John's noted that

---

[1]In plaintiffs' various complaints, Mr. Kelly was referred to only as M.K. In their briefs, however, both parties have identified Mr. Kelly by name, apparently because he has now reached the age of majority.

plaintiffs have asserted in Count I a claim for negligent supervision, which it conceded is a recognized cause of action. St. John's did not suggest any reasons why Kansas courts would not recognize a cause of action for intentional failure to supervise.

In response, Mr. Kelly cited the case of *Dolquist v. Heartland Presbytery*, 2004 WL 74318 (D. Kan. Jan. 15, 2004), in which Judge Vratil concluded that "Kansas courts would recognize a claim for intentional failure to supervise." *See id.* at *3. St. John's should have addressed the *Dolquist* case in its initial brief, as the most cursory research would have revealed that authority, in light of its statement that there is no "case on point that acknowledges intentional failure to supervise as a recognized cause of action." St. John's argument in its reply brief that the *Dolquist* case may be distinguished does not excuse that initial failure to address the case, which the Court certainly must consider.

At any rate, in its reply St. John's noted that the authorities cited by Judge Vratil in her order do not recognize such a cause of action under Kansas law and involve only the negligent failure to supervise. Judge Vratil did not indicate otherwise in her order, however; instead, she merely opined that Kansas courts would also recognize a cause of action based on a more stringent standard of scienter. In its reply, St. John's did not suggest any reason why Kansas courts would not do so.

St. John's also attempted to distinguish *Dolquist*, as well as Restatement (Second) of Torts § 317, on which Judge Vratil relied, as involving the failure to supervise employees or servants, while the present case involves a claim of a school's failure to supervise students. St. John's did not suggest any reason, however, why such a

2

distinction makes a difference. In the preceding Section 316, the Restatement imposes a duty on parents to control their minor children to prevent them from intentionally harming others, similar to the duty imposed on masters in Section 317. *See* Restatement (Second) of Torts § 316. In their complaint, plaintiffs allege that the school's duty to control the behavior of its students arose from its acting *in loco parentis* with respect to those students. Kansas courts have held that high schools do act *in loco parentis* with respect to their students and therefore assume a duty to supervise them. *See, e.g.*, *Dunn v. Unified Sch. Dist. No. 367*, 30 Kan. App. 2d 215, 231-32 (2002). Courts in other jurisdictions have applied Section 316 to parties acting *in loco parentis*. *See, e.g.*, *Gritzner v. Michael R.*, 611 N.W.2d 906, 921 (Wis. 2000); *Wyatt v. McMullen*, 350 So. 2d 1115, 1117 (Fla. Ct. App. 1977). St. John's did not address this alleged source of its duty to its students. The Court concludes nevertheless that there is no basis to treat the situations covered in Sections 316 and 317 differently, and thus that there is no basis to distinguish away Judge Vratil's holding in *Dolquist*. *See D.W. v. Bliss*, 279 Kan. 726, 735 (2005) (there is no duty to control the conduct of another person absent a special relationship of the type described in the Restatement, including Sections 316 and 317).

Neither party has made any argument concerning whether Judge Vratil was correct in her conclusion that Kansas courts would recognize a cause of action for intentional failure to supervise. In the absence of any such argument, the Court sees no reason at this stage not to follow Judge Vratil's holding that Kansas courts would recognize such a claim. Indeed, the Court cannot see any reason why the State of

3

Kansas, having recognized a failure-to-supervise claim under the less stringent negligence standard, would not also allow a plaintiff to try to prove that the defendant's conduct also met a more stringent standard of scienter. Accordingly, the Court rejects this argument by St. John's.

2. St. John's also seeks summary judgment on the merits of Mr. Kelly's claim in Count III for intentional failure to supervise. St. John's cites Mr. Kelly's admission in his deposition that one alleged incident of abuse—his being bound and gagged by other students—occurred with his consent. Despite this evidence, however, St. John's has utterly failed to carry its initial summary judgment burden of demonstrating an absence of a genuine issue of material fact with respect to this claim. *See Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In the complaint, Mr. Kelly alleges not only the binding-and-gagging incident, but also alleges other specific incidents of abuse and his abuse generally. In light of those allegations, the fact that Mr. Kelly may be unable to prove one such specific allegation obviously does not mean or even suggest the absence of any evidence to support the claim.[2] Moreover, even if St. John's could be said to have

---

[2]The Court does not interpret the motion by St. John's as seeking only summary judgment on Count III to the extent it is based on that one allegation of abuse. By its motion, St. John's has clearly sought summary judgment with respect to Count III generally as asserted by Mr. Kelly. Moreover, in response to Mr. Kelly's facts concerning other incidents of abuse, St. John's did not state that its motion was limited only to one basis for Count III; rather, St. John's argued that such facts were irrelevant in the absence of evidence of knowledge of the incident by St. John's. (Such evidence
(continued...)

4

carried its initial burden on summary judgment, Mr. Kelly has provided admissible evidence that he suffered other incidents of abuse, which evidence would preclude summary judgment on this claim. Accordingly, the motion by St. John's for summary judgment is denied.

3. Lastly, the Court notes the separate motion filed by St. John's in which it asserts that plaintiffs have violated the protective order in this case, principally by including various matters in their response to this summary judgment motion. Although that motion will be ruled in due course by the Magistrate Judge, the Court is compelled to comment on two aspects of that motion.

First, St. John's argues that plaintiffs unnecessarily stated facts unrelated to the particular alleged instance of abuse on which St. John's concentrated its motion. The Court flatly rejects that argument. By filing its motion, St. John's put the viability of Count III at issue, and plaintiffs quite reasonably cited evidence to support its allegations that Mr. Kelly suffered abuse on other occasions and that St. John's had knowledge of various misconduct by its students. St. John's should have considered any such negative ramifications when it filed its motion so improvidently.

The summary judgment motion's utter lack of merit leads the Court to its second

---

[2](...continued)
was not necessary here to combat, by pointing out other incidents, the sole argument by St. John's that one alleged instance of abuse did not occur.) Finally, St. John's did not also seek summary judgment on Count I (negligent supervision) to the extent based on the single allegation of abuse, which further suggests that the motion was directed to Count III generally.

5

comment. In its separate motion, St. John's complains repeatedly about plaintiffs' attempts to "grab media attention." It appears to the Court, however, as plaintiffs have suggested, that St. John's filed its summary judgment motion primarily as a vehicle for its own attempt to draw media attention to Mr. Kelly's deposition testimony. The filing of the summary judgment motion was accompanied by the issuance of a press release by St. John's trumpeting Mr. Kelly's admission—a release in which, ironically, St. John's complained about the unnecessary incursion of attorney fees. Moreover, the summary judgment motion was borderline sanctionable—as noted above, St. John's did not bother to address the other bases for Mr. Kelly's claim, nor did it bother to address the principal case addressing the viability of the cause of action.

No doubt St. John's is frustrated by plaintiffs' behavior in so prominently relying on the allegation involving the photograph of Mr. Kelly, both in its earlier complaint and in the media, which has apparently been proven false. The Court is certainly dismayed by plaintiffs' conduct in retrospect. That frustration certainly did not justify the filing of the instant motion, however. Both parties are hereby cautioned that any unnecessary litigation occasioned by future attempts to "grab" positive media attention will not be tolerated and will be dealt with harshly, to include the imposition of sanctions when appropriate.

IT IS THEREFORE ORDERED BY THE COURT THAT the motion by defendant St. John's Military School for partial summary judgment (Doc. # 164) is

**denied**.

IT IS SO ORDERED.

Dated this 18th day of April, 2013, in Kansas City, Kansas.

s/ John W. Lungstrum<br>
John W. Lungstrum<br>
United States District Judge
